Elisa ENCARNACION on Behalf of Arlene GEORGE, Ana Felipe on Behalf of Victoria Felipe, Margarita Guzman on Behalf of Eric Garcia, and Sandra Perez on Behalf of Maurice Perez, on behalf of themselves and all other persons similarly situated, Plaintiff(s),

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant(s).

No. 00 CIV 6597(LTS)(THK).

United States District Court, S.D. New York.

March 29, 2002.

Center for Disability Advocacy Rights, Inc., By James M. Baker, Esq., Christopher James Bowes, Esq., Kramer Levin Naftalis & Frankel LLP, By Jeffrey S. Trachtman, Esq., Michelle A. Rossettie, Esq., Northern Manhattan Improvement Corporation, By Kenneth Rosenfeld, Esq., Matthew Chachere, Esq., New York City, for Plaintiffs.

James B. Comey, United States Attorney for the Southern District of New York, By Susan D. Baird, Esq., New York City, for Defendant.

## OPINION AND ORDER ON MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AND ON MOTION FOR CLASS CERTIFICATION

SWAIN, District Judge.

This lawsuit, plead in relevant part as a class action, challenges the method by which the Commissioner of Social Security ("Commissioner" or "Defendant") determines disability in children for the purpose of awarding benefits under the Supplemental Security Income ("SSI") program, which is administered by the federal Social Security Administration ("SSA"). On January 11, 2002, this Court issued an opinion and entered orders denying a motion for consolidation of this action with a second, individual, action in which the plaintiff sought review of the Commissioner's denial of SSI benefits, dismissing that second action as moot in light of the Commissioner's proffer of full relief to the plaintiff therein, and granting Plaintiffs' motion to file a second amended complaint in this action adding two new proposed class representatives.[1]

This opinion addresses Plaintiffs' motion for class certification and Defendant's motion to dismiss the complaint and for judgment on the pleadings to dismiss Plaintiffs' First Claim set forth in the Second Amended Complaint,[2] both of which motions were argued in November 2001.[3] The Court has considered carefully all ar-

---

[1]. Familiarity with the January 11, 2002 opinion in *Encarnacion v. Barnhart*, 180 F.Supp.2d 492 (S.D.N.Y.2002), is assumed.

[2]. As noted in *Encarnacion*, 180 F.Supp.2d at 497, the Second Amended Complaint is identical to the previous complaint as regards the challenge to the Commissioner's method of determining childhood disability; Defendant's motion to dismiss the complaint and for judgment on the pleadings is therefore deemed directed to the Second Amended Complaint.

[3]. The motion to dismiss and for judgment on the pleadings was interposed in response to the motion for class certification; briefing on the two motions was consolidated.

guments made in connection with the pending motions. For the reasons discussed herein, Plaintiffs' motion for class certification will be denied and Defendant's motion for judgment on the pleadings will be granted.

## BACKGROUND

The following factual recitation is taken from Plaintiffs' Second Amended Class Action Complaint.

The Supplemental Security Income ("SSI") program provides cash assistance to low income individuals who are aged, blind, or disabled, including disabled children. To be eligible for SSI benefits, a child must meet income and resource eligibility requirements and be under 18 and disabled. Prior to 1996, the Social Security Act (the "Act") defined disability for children in relation to its definition of disability for adults, finding disability in a child if he or she suffered from any medically determinable physical or mental impairment of " 'comparable severity' " to an impairment that would render an adult disabled. (Compl. at ¶ 29 (quoting 42 U.S.C. § 1382c(a)(3)(A)).) From 1974–1990, pursuant to the Commissioner's regulations implementing the Act, SSI benefits were provided only for those children whose condition met or medically equaled one of the impairments enumerated in a "Listing of Impairments," published in the regulations (the "listings"). In February of 1990, however, the Supreme Court held that the regulations the Commissioner used to determine childhood disability failed to implement the comparable severity standard established by the Act because the " 'listings-only' " approach was more restrictive than the statutory standard for adults and because it failed to provide an " 'individualized, functional analysis' " of the degree of disability. (Compl. at ¶ 31 (quoting Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).)

In response to the Zebley decision, the Commissioner promulgated new regulations regarding the comparable severity standard. Under the regulations, which went into effect in 1993, childhood disability determinations commenced, as before, with an examination of whether the child's impairments met or medically equaled a listing. If they did not, the Commissioner then conducted an "individualized functional assessment" ("IFA"), by which it was determined whether a child's impairment(s) in (depending on age) five or six developmental or functional "domains" rendered the child disabled. Limitations in each of the domains were labeled "mild," "moderate," or "marked." A child whose IFA showed a "marked" limitation in one domain and a "moderate" limitation in another domain, or "moderate" limitations in three domains, was to be considered disabled. The Commissioner had the flexibility to factor in mild limitations as well: the " 'one marked plus one moderate' " or " 'three moderate' " standards were " 'only guidelines to illustrate severity.' " (Compl. at ¶ 33 (quoting 20 C.F.R. § 416.924e(a) (1993)).) Using those guidelines, the Commissioner decided disability claims on a case-by-case basis, by taking into account all relevant evidence in the record. (Compl. at ¶ 33 (citing 20 C.F.R. § 416.924e(a) (1993)).)

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), which directed the Commissioner to discontinue use of the IFA and to apply a new disability standard in making new childhood disability determinations and in redetermining eligibility of children who had been found to be disabled under the earlier (1993) regulations. The PRWORA changed the Act's definition of a disabled child: "An individual under the age of 18 shall be considered disabled for purposes of this title if that individual has a medically determinable

physical or mental impairment, which results in marked and severe functional limitations . . . ." (Compl. at ¶ 37 (quoting 42 U.S.C. § 1382c(a)(3)(C)).) In response to the PRWORA, the Commissioner established a new standard for determining childhood disability in regulations issued in 1997. As under the prior regulations, a child is eligible for disability benefits if his or her impairments meet or medically equal a listing, and age and income requirements are satisfied. If the impairments do not meet or medically equal a listing, the 1997 regulations require that the Commissioner determine whether the child has an impairment that "functionally equals" a listed impairment, rather than assessing functional impairment by conducting an IFA. (Compl. at ¶ 38 (citing 20 C.F.R. §§ 416.924(d), 416.926a(a)).) A child satisfies this criterion if he or she has the requisite number and degree of limitations in one or more of certain "'broad areas of development or functioning.'" (Compl. at ¶ 38 (quoting 20 C.F.R. § 416.926a(b)(2)).) Instead of the "one marked plus one moderate," or "three moderate" limitations required by the earlier regulations, the 1997 regulations require that a child demonstrate an "extreme" limitation in one broad area or "marked" limitations in any two of the identified areas of development or functioning to be eligible for disability benefits.[4]

The Act requires that the Commissioner " 'consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be [the basis of eligibility]" ' in assessing both adult and child claimants. (Compl. at ¶ 25 (quoting 42 U.S.C. § 1382c(a)(3)(G)).) The House

Conference Report accompanying passage of the PRWORA indicated that it was expected

> that SSA will . . . ensure that the combined effects of all the physical or mental impairments of an individual under age 18 are taken into account in making a determination regarding eligibility under the definition of disability. The conferees note that the 1990 Supreme Court decision in *Zebley* established that SSA had previously been remiss in this regard . . . . The conferees do not intend to limit the use of functional information, if reflecting sufficient severity and is otherwise appropriate.

(*See* Compl. at ¶ 40 (quoting H.R. Conf. Rep. 104–725, 104th Cong., 2nd Sess.1996 at 748–49, *reprinted in* 1996 U.S.Code Cong. & Ad. News 2649).) The 1997 regulations also indicate: that the combined effect of all impairments will be considered, regardless of whether any impairment would suffice if considered separately (Compl. at ¶ 43 (quoting 20 C.F.R. § 416.923)); that a child under age 18 will be considered disabled if he or she has a medically determinable physical or mental impairment or " 'combination of impairments that causes marked and severe functional limitations, . . . .' " (Compl. at ¶ 44 (quoting 20 C.F.R. § 416.906) (modification from original not reprinted)); and that the combined effects upon overall health and functioning of all of a claimants's impairments will be considered (Compl. at ¶ 45 (quoting 20 C.F.R. § 416.924(a))).

Adjudicators of childhood disability claims are instructed that there should be no adding or combining of less than "marked" functional limitations imposed

---

**4.** The Court notes that the "areas" of functioning nomenclature used in the 1997 regulations is substantially equivalent in scope and significance to the "domains" of functioning nomenclature employed in the 1993 regulations. *See* Compl. at ¶ 38; Compl., Ex. A at 11. The terms are used here interchangeably.

by the child's impairment for a finding of disability under the 1997 regulations. (Compl. at ¶ 47 (citing Social Security Administration, *Childhood Disability Training: Student Manual*, Pub. No. 64–075 (Mar.1997) (the "Manual"), at 15 (attached to Compl. as Ex. A)).)[5] Training materials relating to the administration of the 1997 regulations that were provided to adjudicators in March 1998 do not provide a method to evaluate the effects of less than "marked" limitations in combination with "marked" or other "moderate" or "mild" limitations. (*Id.* at ¶ 48.)

Plaintiffs' First Claim of the Second Amended Complaint contends that the Commissioner's "practice and policy, in making childhood disability determinations, of refusing to consider the effects of any impairments that impose less than marked limitations" violates the Act and the SSA regulations promulgated thereunder, and "deprives the named plaintiffs and members of the class of SSI benefits to which they are entitled."[6] (Compl. at ¶ 68.) Characterizing their challenge as one to the Commissioner's policy (or implementation of the statutory and regulatory standards) rather than to the text of the regulations, Plaintiffs argue that the "non-combination" policy is inconsistent both with the statute and with the regula-

tions. In their Second Claim, Plaintiffs contend that the SSA's denials of disability benefits to the individual named claimants were infected by other errors of law.[7]

Plaintiffs seek declaratory and injunctive relief, including the discontinuation of the Commissioner's "non-combination" policy and practice, the adoption of regulations ensuring full consideration of the combined effects of all impairments, the immediate review of all unfavorable determinations made pursuant to the PRWORA and 1997 regulations in which SSA adjudicators failed to consider the effects of impairments that imposed less than "marked" limitations of function, and the reinstatement of SSI disability benefits for all class members who received benefits prior to the enactment of the PRWORA and who were found no longer disabled under the PRWORA and 1997 regulations.

## *DISCUSSION*

### *MOTION FOR CLASS CERTIFICATION*

■ Plaintiffs seek certification of a class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). Defendant strenuously opposes certification. Under Rule 23, one or more members of a class may bring suit on behalf of all other class

---

5. An example in the *Manual* is a child with "moderate" limitations in cognition and "moderate" limitations in communication unrelated to cognition; adjudicators are instructed not to combine these to equal one "marked" limitation of function. *See Manual*, Pub. No. 64–075 (Mar.1997), at 15.

6. Specifically, Plaintiffs contend that what they characterize as the Commissioner's "non-combination" policy violates 42 U.S.C. Section 1382c, which, *inter alia*, defines the term "disabled individual," and 20 C.F.R. Sections 416.906 (defining disability for children, and providing that an individual under age 18 will be considered disabled if he or she has a combination of impairments that causes marked and severe functional limitations),

416.923 (requiring consideration of combined effect of all impairments), and 416.924(a) (setting forth steps to evaluate disability, including consideration of the combined effects of all impairments on overall health and functioning). *See* Compl. at ¶ 68.

7. On February 28, 2002, pursuant to the parties' request, partial judgment was entered in favor of plaintiffs Maurice Perez and Eric Garcia on the Second Claim, and their individual claims were remanded to the Commissioner for findings of disability. On December 26, 2001, counsel for Plaintiffs informed the Court that plaintiff Victoria Felipe had received a fully favorable ruling on her pending individual claim for SSI benefits.

members only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If the foregoing criteria are satisfied, a class action *may* be maintained if (1) prosecution of separate actions would create a risk of inconsistent adjudications or adjudications with respect to individual members of the class would impair the ability of members not parties to the adjudications to protect their interest, (2) the party opposing the class has acted on grounds generally applicable to the class, or (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting individual members, and the Court finds that a class action is superior to other available methods of adjudication of the controversy. Fed.R.Civ.P. 23(b). " 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.' " *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) (citation omitted).

Rule 23(c)(1) counsels that a class should be certified as soon as practicable after the commencement of an action brought as a class action. As previously noted, Defendant's opposition to class certification was accompanied by its cross-motion for judgment on the pleadings. Plaintiffs' motion for class certification and Defendant's motion for determination of the case on the merits were briefed together. Because the class certification motion and merits-based motion were briefed and argued simultaneously, the Court did not address first, and separately. Plaintiffs' motion for class certification.

Nor did the Court have an opportunity to address the timing, nature or content of notice to members of the putative class prior to the presentation of the arguments directed to the merits of the class claims. As noted above, the Court has determined that the Commissioner is entitled to judgment on the pleadings on Plaintiffs' First Claim in the Second Amended Complaint, which is the only claim plead as a class action.

The Court's determination with respect to the propriety of class certification is thus unavoidably informed by its conclusions on the merits, and the Court must weigh, in light of those conclusions, the relative burdens and benefits of the procedural aspects of class certification in determining whether to grant the motion. Having done so, the Court concludes that, even if all of the Rule 23(b)(1) or 23(b)(2) criteria were satisfied by a class of plaintiffs here, certification and its attendant notice procedures would not serve the interests of judicial economy or optimize protection of the interests of absent class members. *Cf. Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564–65 (2d Cir.1968) ("[W]e hold that notice is required as a matter of due process in all representative actions ....") (*rev'd on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Plaintiffs' counsel have presented ably the arguments in support of their substantive position with respect to the non-combination policy. Were the Court to require, at this stage, that notice be provided to absent class members prior to announcing its determination on the merits Plaintiffs, who are seeking sustenance benefits, would be forced to incur expenses that they will not be able to recoup in this action, and adjudication of the merits of the action would be delayed unnecessarily. The Court is mindful of the significance of time in an action of this nature, in which the standards governing children's access to gov-

ernmental disability benefits are at issue. The issue can be adjudicated without class certification. The Court's determination can then be presented for appellate review promptly, should plaintiffs determine to seek such review.

The Second Circuit "has specifically held that it is within a district court's discretion to reserve decision on a class certification motion pending disposition of a motion to dismiss." *Benfield v. Mocatta Metals Corp.*, No. 91 Civ. 8255(LJF), 1993 WL 148978, at *2 (S.D.N.Y. May 5, 1993) (citing *Christensen v. Kiewit–Murdock Investment Corp.*, 815 F.2d 206, 214 (2d Cir. 1987)). At the same time, where the court decides to enter judgment on the merits in favor of defendants, certification of a plaintiff class "could only serve to prejudice absent class members." *Benfield*, 1993 WL 148978, at *2.

Certification of a class at this stage is likely to implicate the due process rights of absent class members and possibly cause unfair prejudice to them, in addition to causing delay of adjudication of this action.[8] Given the posture of this case, certification here would not serve "the principal purposes of the class-action procedure— promotion of efficiency and economy of litigation." In light of the possible risks and the absence of benefits that are typically derived from the class action vehicle, the Court denies Plaintiffs' class certification motion.

*MOTION TO DISMISS THE COMPLAINT AND FOR JUDGMENT ON THE PLEADINGS*

Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint as to plaintiff Victoria Felipe for lack of subject matter jurisdiction and pursuant to Rule 12(c) for judgment on the pleadings as to Plaintiffs' claim relating to the legality of the "non-combination" policy. Defendant argued that Felipe's claim was unripe because she had failed to exhaust her administrative remedies prior to bringing her claims before this Court. Because, after Defendant's motion had been fully briefed, plaintiff Felipe was awarded the benefits she sought,[9] the question of exhaustion is moot and Defendant's motion to dismiss the complaint on that ground is denied.

The test for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). The Court must accept the allegations of Plaintiffs' complaint as true, and draw all reasonable inferences in their favor. *Id.* Dismissal is appropriate if " 'it appears beyond a reasonable doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitled [them] to relief.' " *Id.* (citation omitted). Even taking all the facts plead by Plaintiffs as true, including Plaintiffs' characterization of the operation of the Commissioner's

8. Courts have sometimes considered the possible prejudice to defendants of deciding substantive motions prior to deciding the class certification question. The Court expects that no serious prejudice could be found where, as here, Defendant has had a full opportunity, both by oral argument and written submissions, to argue its position and has done so in vigorous opposition to class certification. *See, generally, Wright v. Schock*, 742 F.2d 541, 544–45 (9th Cir.1984) (finding no prejudice in

deciding merits before certifying a class where defendant consented to the chosen procedure, and discussing cases).

9. *See* letter of 12/26/01 from counsel for Pls. to Court, attaching SSA Notice of Decision— Fully Favorable for Victoria Felipe, dated Nov. 30, 2001; letter of 02/20/02 from counsel for Deft. to Court; letter of 02/21/02 from counsel for Pls. to Court.

"non-combination" policy, Defendant is entitled to judgment as a matter of law.

The parties' dispute focuses on the analytical methodology employed by the Commissioner in the functional limitation phase of the disability analysis (Plaintiffs do not challenge the Commissioner's methodology for evaluating impairments in determining "listing" status or medical equivalence). Defendant does not dispute Plaintiffs' contention that the Commissioner employs the so-called "non-combination" policy—one that, for functional capacity based disability determinations, precludes combined consideration, across different "areas" of functioning, of limitations that are less than "marked." The parties, moreover, agree that the legislative history of the Act and pertinent regulations are relevant to analyzing the lawfulness of the "non-combination" policy. The disputes between the parties go to the degree of deference this Court owes the Commissioner in reviewing that policy and whether, under the appropriate standard of review, the Commissioner's policy can be found to constitute a violation of the Act and regulations promulgated thereunder.

*Standard of Deference*

The starting point for the Court's analysis is the degree of deference the Court owes the Commissioner's interpretation of the Act. Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* a court reviewing an agency's construction of the statute it administers must ask, first, whether Congress has directly spoken to the precise question at issue. *Id.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the intent of Congress is clear, the inquiry ends, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.,* 467 U.S. at 843, 104 S.Ct. 2778. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. 2778. "[L]egislative regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute," and considerable weight is afforded to an executive department's construction of a statutory scheme it is entrusted to administer. *Id.; Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York,* 273 F.3d 481, 491 (2d Cir.2001).

Plaintiffs assert that the Commissioner's "non-combination" policy is not entitled to *Chevron* deference because it is an informal, internal, covert, policy that was not subject to the rigors of formal rule-making. Plaintiffs argue not only that *Chevron*-style deference should not apply but further assert that, because the policy was kept from the public (that is, not clearly stated in the 1997 interim final regulations and mentioned only in introductory remarks to the 2001 final regulations [10]), it is not even entitled to the lower degree of respect accorded interpretations found in

---

**10.** The 1997 regulations, which the Complaint challenges, were published as interim final rules on February 11, 1997. (Def.'s Mem. in Supp. of Cross–Mot. for J. on the Pleadings & in Opp. to Pls.' Mot. for Class Certification ("Def.'s Mem."), at 7.) The Commissioner promulgated revised final rules that were published on September 11, 2000, and that went into effect on January 2, 2001. (*Id.* at

9.) The 2001 regulations continue to provide that a child's impairment(s), to be disabling, must result in marked limitations in two areas of functioning or an extreme limitation in one area. (*Id.*) Because there is no material difference between the regulations, for purposes of this Opinion, the 1997 (interim final) and 2001 (final) regulations are referred to interchangeably, except as otherwise specified.

opinion letters, policy statements, agency manuals, enforcement guidelines and the like. *See, generally, Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (interpretations contained in formats such as opinion letters entitled to respect but only to extent they have the power to persuade); *Catskill Mountains*, 273 F.3d at 490–91. Plaintiffs contend that the Commissioner's method of applying the disability standard is not entitled to any deference because it was covert and is not set forth in the regulations.

The 1996 PRWORA amended the Social Security Act to define "disabled," with respect to children, as follows:

(i) an individual under the age of 18 ... be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

(ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity ... may be considered disabled.

PRWORA, Pub.L. 104–193, 110 Stat. 2105, § 211(a)(4) (Aug. 22, 1996), *codified at* 42 U.S.C.A § 1382c(a)(3)(C) (West 1992 & Supp.2001). Congress directed the Commissioner to implement regulations to implement the amendments. 42 U.S.C.A. § 1382 (West 1992 & Supp.2001). In response, the Commissioner promulgated interim final rules in February of 1997 which provided that, to be found disabled for

purposes of receiving benefits, a child must (1) not be working and performing substantial gainful activity, (2) show that she or he has a "severe" impairment or combination of impairments, and (3) show that such impairment(s) meets, medically equals, or functionally equals the severity of an impairment(s) in the listings. *See* 20 C.F.R. §§ 416.924, 416.924(b), 416.924(c), 416.924(d) (1998). Functional equivalence could be found, among other means.

by evaluating the effects of [a child's] impairment(s) in broad areas of development or functioning, such as social functioning, motor functioning, or personal function ... and determin[ing] if [the] functional limitations are equivalent in severity [to the listings] ....

20 C.F.R. § 416.926a(b)(2) (1998). The regulation continued: "If [a child has] *extreme limitations in one area of functioning or marked limitation in two areas of functioning,* [the Commissioner] will find that [a child's] impairment(s) is functionally equivalent in severity to a listed impairment," thereby satisfying the new definition of childhood disability. *Id.* (emphasis added).

Contrary to Plaintiffs' argument, the policy and analytical methodology that Plaintiffs challenge was patent in the 1997 regulations.[11] Plaintiffs' contention that the Commissioner's non-combination policy was covert cannot stand in light of the clear language of the 1997 regulations indicating that, when functional equivalence is at issue, childhood disability will be found where there are "extreme limitations in one area of functioning or marked limitation in two areas of functioning." 20 C.F.R. § 416.926a(b)(2) (1997). It is of no

---

**11.** In evaluating a motion to dismiss, the Court is permitted to take in to account the contents of documents attached to or incorporated in the complaint, *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989), as well as those documents which are "integral" to the complaint. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996).

moment that the regulations do not forbid explicitly the combination of less than "marked" limitations across areas to satisfy the requirement of one "extreme"/two "marked" limitations. Congress called on the Commissioner to promulgate regulations to implement the new definition of childhood disability, not spell out the various degrees or combinations of limitations that would *not* constitute disability under the new standard. *See* 42 U.S.C.A. § 1382. Whether or not the *only* possible reading of the regulation is that the one extreme/two marked standard is the exclusive means of finding disability, the Commissioner's interpretation is a reasonable, obvious, construction of the language of the regulation; the characterization of the Commissioner's policy as "clandestine" is therefore erroneous. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778; Pls.' Reply Br. at 13 (plaintiffs do not contest validity of the regulations but, rather, the "clandestine policy and practice of ignoring less than marked limitations, which is not contained in the regulations and therefore is entitled to no deference."). Accordingly, the Commissioner's failure to state explicitly in the regulations that less than "marked" limitations would not be combined across functional areas in making functional equivalence determinations does not defeat the applicability of *Chevron* deference.

Furthermore, because the standard thus was included in the text of the interim final regulations and those regulations were issued subject to notice and comment procedures, the policy was subject to the "indicia of expertise, ... rigorous consideration, and public scrutiny that justify *Chevron* deference." *Catskill Mountains,* 273 F.3d at 491; 62 FR 6408, SSA Rules and Regulations, Supplemental Security Income; Determining Disability for a Child Under Age 18; Interim Final Rules with Request for Comments, Feb. 11, 1997; *United States v. Haggar Apparel*

*Co.,* 526 U.S. 380, 389, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) ("Particularly in light of the fact that the agency utilized the notice-and-comment rulemaking process before issuing the regulations, the argument that they were not intended to be entitled to judicial deference implies a sufficient departure from conventional contemporary administrative practice that we ought not to adopt it absent a different statutory structure and more express language to this effect in the regulations themselves."). The policy will, accordingly, be given substantial deference.

This Court has further reason to afford deference to the Commissioner's policy (as embodied in the regulations) is because the regulations are legislative, not interpretive, rules. As the Second Circuit has noted in this regard:

> Interpretive rules and legislative rules differ in important ways. Legislative rules bind members of the agency and the public, and such rules receive substantial deference from the courts. Indeed, we have stated that "[w]hen Congress delegates to an agency the power to promulgate rules, the [agency] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner ...." Legislative rules can impose obligations on members of the public distinct from, and in addition to, those imposed by statute. Because of the potentially powerful nature of legislative rules, it is essential to recognize that agencies have the power to issue legislative rules only if, and to the extent that, Congress has so authorized.

*Sweet v. Sheahan,* 235 F.3d 80, 91 (2d Cir.2000) (internal citations omitted). The regulations at issue here were promulgated pursuant to the explicit statutory authority of the PRWORA, which specifically

called for the termination of use of the IFA in determining disability, set forth a new, more restrictive, definition of childhood disability, and empowered the Commissioner to develop and promulgate regulations in implementing the change. The Commissioner apparently understood Congress's expectation that the agency would engage in legislative rule-making, stating in the preamble to the interim final rules:

> Public Law 104–193 provides a new statutory definition of disability for children claiming SSI benefits and directs us to make significant changes in the way we evaluate childhood disability claims. Under the new law, a child's impairment or combination of impairments must cause more serious impairment-related limitations than the old law and our prior regulations required .... These rules implement all of the provisions of sections 211 [Benefits for Disabled Children: Definition and eligibility rules] and 212 [Benefits for Disabled Children: Eligibility redeterminations and continuing disability reviews] .... To be found disabled under these rules, an individual under age 18 must have 'marked and severe functional limitations,' which means that his or her impairment or combination of impairments must meet, or medically equal or functionally equal, the severity of a listed impairment.

62 Fed.Reg. 6408, 6409–10. The promulgation of the regulations through the notice-and-comment process "lend[s] force to the conclusion that the regulations were an exercise in legislative rulemaking." *Sweet*, 235 F.3d at 92–93 (finding rules were legislative where they were promulgated pursuant to explicit delegation of authority, refined and modified statutory guidelines, and agencies understood Congressional intent that they engage in legislative rulemaking). "Because the rules are legislative, the interpretations contained therein, ... receive substantial deference from [the] court." *Id.* at 93; *see also Good*

*Samaritan Hosp. Regional Med. Ctr. v. Shalala*, 85 F.3d 1057, 1061–62 (2d Cir. 1996).

 The propriety of a deferential standard of review thus established, the Court turns to the question of whether the Commissioner's use of the one "extreme"/two "marked" limitations standard as the exclusive basis of finding disability for the purposes of the functional equivalence prong of the disability analysis is a permissible interpretation of the statute. The Court answers the question in the affirmative.

Congress delegated to the Commissioner authority to promulgate regulations to implement the new definition of childhood disability set forth in the PRWORA: "[w]ithin 3 months after the date of the enactment of this Act, the Commissioner of Social Security shall prescribe such regulations as may be necessary to implement the amendments made by this subtitle." Pub.L. 104–193, 110 Stat. 2105, 2195, § 215. The language of the statute does not include a specific standard or methodology for functional equivalence determinations. The Conference Report that accompanied the PRWORA indicated, however, that it was the conferees' expectation that "only needy children with severe disabilities be eligible for SSI," and that, as regards disability determinations by reference to domains of functioning, "the conferees expect no less than two marked limitations as the standard for qualification." H.R. Conf. Rep. No. 725, 104th Cong., 2d Sess. 328 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649, 2716. Because the statutory language does not mandate the challenged standard, the question is whether the agency's interpretation of Congressional intent is a permissible one.

 " '[A]n agency's interpretation of a statute in a legislative rule is binding on a

court if the interpretation is a 'permissible construction of the statute.'" *Sweet,* 235 F.3d at 93, *quoting United States v. Yuzary,* 55 F.3d 47, 51 (2d Cir.1995), *quoting Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. *See also Good Samaritan,* 85 F.3d at 1060 ("If ... the statute is silent or ambiguous with respect to the specific issue, we must defer to any reasonable construction of the statute by the Secretary."). The Court finds that the challenged "non-combination" policy is a reasonable construction of the PRWORA. The SSA's use of functional area-based analysis, including its focus on the combined effects of impairments within, rather than across, the functional areas, is consistent with the language of the PRWORA and Congressional intent. While Congress, in passing the PRWORA, discontinued the IFA process, which involved a more flexible domain-based analysis, it clearly expected that some form of domain-based analysis would survive: "[i]n those areas of the Listing that involve *domains of functioning,* the conferees expect *no less than two marked limitations* as the standard for qualification." H.R. Conf. Rep. No. 725, 104th Cong., 2d Sess. 328 *reprinted in* 1996 U.S.C.C.A.N. 2649, 2716 (emphasis added). Given that clear indication of legislative intent as to analytical methodology and standard of severity, it was reasonable for the Commissioner to require, when establishing a minimum standard for a finding of disability, a showing of "marked" limitations in two separate areas of functioning in determining disability based on functional equivalence.

Nor is the "non-combination" policy inconsistent with the statutory and similar regulatory language requiring consideration of the "combined effect of all of the individual's impairments." *See* 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R. § 416.923 (1997). Nothing in the statute or the Commissioner's regulations governing determination of childhood disability suggests that adjudicators of childhood dis-

ability claims are required to collapse or redefine broad areas of functioning in order to find the requisite level of functional limitation. Where a child has an impairment (i.e., a medical condition) that limits his or her ability in different areas of functioning, the regulations provide for all the limitations caused by that impairment to be weighed in each of the separate areas in evaluating whether the child shows a marked limitation in any given area, even if each limitation, standing alone, is less than marked. *See* Mem. in Further Supp. of Cross–Mot. for Judgment on the Pleadings and in Opp. to Pls.' Mot. for Class Certification ("Deft's Reply Br.") at 14, citing 20 C.F.R. § 416.926a(c)(3)(C). In this way, an impairment that causes a less than marked limitation in the area of social functioning in addition to the presence of another less than marked limitation caused by a different impairment may contribute to the finding of a marked or extreme limitation in the area of social functioning.

An impairment may affect a child's ability to function in several different areas, such as cognition and social functioning; the evaluation of the effect of an impairment includes consideration of the resulting limitations in all relevant areas. This approach of combining limitations caused by impairments within given domains of functioning is set forth in the regulations: "[m]arked limitation may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." 20 C.F.R. § 416.926a(c)(3)(C). In this way, the Commissioner has satisfied, in the functional equivalence element of the disability determination, the requirement that "the combined impact of [a claimant's] impairments shall be considered throughout the disability determination process," 42 U.S.C. Section 1382c(a)(3)(G), and oper-

ates in a manner consistent with the principle that "the combined effects of all the physical or mental impairments of an individual under age 18 are taken into account in making a determination regarding eligibility under the definition of disability." H.R. Conf. Rep. No. 725, 104th Cong., 2d Sess. 328 (1996), *reprinted in* 1996 U.S.C.C.A.N. at 2715–16. Congress, in drafting the PRWORA, was presumably familiar with the Commissioner's previous practice, under the IFA methodology, of considering less than marked limitations across separate domains in determining whether functional equivalence was satisfied under the IFA procedure. The absence in the statute and legislative history of any discussion either of giving weight to anything less than marked limitations or of combining limitations across areas of functioning after elimination of the IFA procedure underscores the reasonableness of the Commissioner's discontinuation of the practice of "adding up" limitations across functional area lines.

Although the statute could also reasonably be interpreted to permit the sort of cross-domain assessment advocated by Plaintiffs, under the deferential review standard that applies here, the Court cannot impose such an interpretation upon the Commissioner, even if it were one the Court might prefer. *See Chevron,* 467 U.S. at 842–43, n. 11, 104 S.Ct. 2778 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.").

Even if the Court had not found that the challenged approach is legislative in nature and entitled to *Chevron* deference, it is unlikely that a different conclusion would be reached here. As explained above, the Commissioner's policy was not covert. As the Commissioner's interpretation of the statute, it would still, therefore, be entitled to some degree of respect. *See Christensen,* 120 S.Ct. at 1662–63 (interpretations not entitled to deference given to legislative regulations entitled to respect to the extent they have power to persuade). The one extreme two marked standard is not "'facially invalid or incomplete,'" *Sullivan v. Zebley,* 493 U.S. 521, 527, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), because it is a reasonable implementation of the Congressional intent in enacting the PRWORA: "no less than two marked limitations as the standard for qualification," 1996 U.S.C.C.A.N. at 2716. The standard, moreover, permits the award of benefits "in conformity with the intent of Congress." *Zebley,* 493 U.S. at 527, 110 S.Ct. 885. Plaintiffs concede that Congress, in enacting the PRWORA, intended to make the standard for awarding SSI benefits to children more rigorous. *See* Pls.' Br. at 2, 9 ("it is universally recognized that Congress's intent was to tighten eligibility standards"). By requiring that a claimant show a cumulative impact of limitations that are no less than marked in two areas and by permitting the consideration of the combined impact of less than marked limitations within an area, the Commissioner has carried out Congress's intent to tighten standards and has complied with the Act's requirement that limitations be considered in combination. Plaintiffs' argument that the standard is arbitrary, capricious and contrary to the statute must therefore fail.

For the foregoing reasons, Defendant's motion for judgment on the pleadings will be granted as to Plaintiffs' First Claim set forth in the Second Amended Complaint. As noted, the parties have confirmed that a final decision has been entered, granting plaintiff Victoria Felipe a full award of benefits. Unless Plaintiffs show good cause, in writing, within thirty days of the date of this Opinion, for continuation of

this action as to plaintiff Victoria Felipe, any individual claims asserted on behalf of plaintiff Felipe under the Second Claim of the Second Amended Complaint will be dismissed as moot.

### CONCLUSION

For the reasons discussed above, Plaintiffs' motion for class certification is denied and Defendant's motion for judgment on the pleadings is granted as to the First Claim of the Second Amended Complaint. The subject matter jurisdiction prong of Defendant's motion, directed to plaintiff Felipe's claims, is denied as moot. Defendant shall answer, move or otherwise respond to plaintiff Encarnacion's individual claims asserted in the Second Claim of the Second Amended Complaint no later than 60 days from the date hereof.

SO ORDERED.